**No. 25-20090**

# In the United States Court of Appeals for the Fifth Circuit

Robin Wayne Smith,

*Plaintiff–Appellee*,

v.

Monte Smith,

*Defendant–Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## BRIEF FOR APPELLANT

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Cory A. Scanlon
Assistant Solicitor General
Cory.Scanlon@oag.texas.gov

Garrett C. Gray
Assistant Attorney General
Garrett.Gray@oag.texas.gov

*Counsel for Appellant*

# CERTIFICATE OF INTERESTED PERSONS

No. 25-20090

ROBIN WAYNE SMITH,

*Plaintiff–Appellee*,

v.

MONTE SMITH,

*Defendant–Appellant*.

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Cory A. Scanlon
CORY A. SCANLON
*Counsel for Appellant*

## Statement Regarding Oral Argument

Defendant-Appellant Monte Smith respectfully requests oral argument. Dr. Smith believes that oral argument will assist the Court in resolving the issues presented.

# Table of Contents

Page

Certificate of Interested Persons ..... i
Statement Regarding Oral Argument ..... ii
Table of Authorities ..... iv
Statement of Jurisdiction ..... 1
Issues Presented ..... 2
Introduction ..... 3
Statement of the Case ..... 4
  I. Factual Background ..... 4
  II. Procedural Background ..... 5
Summary of the Argument ..... 6
Standard of Review ..... 7
Argument ..... 7
  I. Plaintiff Has Not Sufficiently Alleged an Eighth Amendment Violation Against Dr. Smith ..... 8
    A. Plaintiff alleges no facts to support his legal conclusions about Dr. Smith. ..... 10
    B. The facts alleged by Plaintiff contradict his legal conclusions about Dr. Smith ..... 12
  II. Dr. Smith Is Entitled to Qualified Immunity. ..... 15
    A. Dr. Smith did not violate clearly established law. ..... 15
    B. Dr. Smith's alleged conduct was not objectively unreasonable. ..... 21
Conclusion and Prayer ..... 23
Certificate of Compliance ..... 24

# Table of Authorities

Page(s)

**Cases:**

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) .......... 15, 16
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 9, 11
*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) .......... 7, 8
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 15
*Brauner v. Coody*,
793 F.3d 493 (5th Cir. 2015) .......... 19
*Brosseau v. Haugen*,
543 U.S. 194 (2004) .......... 16, 17, 21
*Cleveland v. Bell*,
938 F.3d 672 (5th Cir. 2019) .......... 10, 12
*Connick v. Thompson*,
563 U.S. 51 (2011) .......... 10, 12
*Crittindon v. LeBlanc*,
37 F.4th 177 (5th Cir. 2022) .......... 10, 22
*Cunningham v. Castloo*,
983 F.3d 185 (5th Cir. 2020) .......... 15, 16
*Doe v. Ferguson*,
128 F.4th 727 (5th Cir. 2025) .......... 8
*Domino v. Tex. Dep't of Crim. Just.*,
239 F.3d 752 (5th Cir. 2001) .......... 9, 10
*Easter v. Powell*,
467 F.3d 459 (5th Cir. 2006) .......... 19, 20
*Edmiston v. Borrego*,
75 F.4th 551 (5th Cir. 2023) .......... 8
*Estelle v. Gamble*,
429 U.S. 97 (1976) .......... *passim*
*Evett v. DETNTFF*,
330 F.3d 681 (5th Cir. 2003) .......... 9

*Farmer v. Brennan*,
511 U.S. 825 (1994) .................................................... 9, 10, 12
*Garcia v. Blevins*,
957 F.3d 596 (5th Cir. 2020) .................................................... 21
*Gates v. Tex. Dep't of Protective & Regul. Servs.*,
537 F.3d 404 (5th Cir. 2008) .................................................... 22
*Gibson v. Collier*,
920 F.3d 212 (5th Cir. 2019) .................................................... 19
*Hartman v. Moore*,
547 U.S. 250 (2006) .................................................... 9
*Johnson v. Treen*,
759 F.2d 1236 (5th Cir. 1985) .................................................... 22
*Jones v. Lumpkin*,
No. 23-40612, 2024 WL 1994279 (5th Cir. May 6, 2024) .................................................... 11
*King v. Dogan*,
31 F.3d 344 (5th Cir. 1994) .................................................... 14
*Malley v. Briggs*,
475 U.S. 335 (1986) .................................................... 2, 16, 22
*Mason v. Faul*,
929 F.3d 762 (5th Cir. 2019) .................................................... 22
*Mayweather v. Foti*,
958 F.2d 91 (5th Cir. 1992) .................................................... 19
*McClelland v. Katy Indep. Sch. Dist.*,
63 F.4th 996 (5th Cir. 2023) .................................................... 2
*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .................................................... 1
*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019) .................................................... 15
*Mullenix v. Luna*,
577 U.S. 7 (2015) .................................................... 16,17
*Norton v. Dimazana*,
122 F.3d 286 (5th Cir. 1997) .................................................... 19
*Oliver v. Scott*,
276 F.3d 736 (5th Cir. 2002) .................................................... 12
*Parker v. Blackwell*,
23 F.4th 517 (5th Cir. 2022) .................................................... 15, 16

*Parker v. LeBlanc*,
73 F.4th 400 (5th Cir. 2023)....9
*Pearson v. Callahan*,
555 U.S. 223 (2009)....8
*Porter v. Epps*,
659 F.3d 440 (5th Cir. 2011)....*passim*
*Roberts v. City of Shreveport*,
397 F.3d 287 (5th Cir. 2005)....9
*Smith v. Linthicum*,
No. 21-20232, 2022 WL 7284285 (5th Cir. Oct. 12, 2022)....13, 20
*Spikes v. Wheat*,
141 F.4th 662 (5th Cir. 2025)....9, 22
*Stapleton v. Lozano*,
125 F.4th 743 (5th Cir. 2025)....7
*Stewart v. City of Hou. Police Dep't*,
372 F. App'x 475 (5th Cir. 2010)....14
*Swint v. Chambers Cnty. Comm'n*,
514 U.S. 35 (1995)....9
*Taylor v. Barkes*,
575 U.S. 822 (2015)....21
*Vincent v. City of Sulphur*,
805 F.3d 543 (5th Cir. 2015)....16
*Wilson v. Layne*,
526 U.S. 603 (1999)....16

**Constitutional Provisions and Statutes**

U.S. Const. amend. VIII....*passim*
28 U.S.C. § 1291....1
28 U.S.C. § 1331....1
42 U.S.C. § 1983....15, 18, 19

## Statement of Jurisdiction

The district court, which had jurisdiction under 28 U.S.C. § 1331, denied Dr. Smith's assertion of qualified immunity on February 14, 2025. ROA.415-18. Dr. Smith timely appealed the district court's order denying qualified immunity on March 14, 2025, ROA.419-21, and this Court has jurisdiction to review the district court's order under 28 U.S.C § 1291 and the collateral-order doctrine, *see Mitchell v. Forsyth*, 472 U.S. 511 (1985).

## Issues Presented

Officials like Dr. Smith enjoy qualified immunity from suits like this unless the official is plainly incompetent, or they knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff bears the burden of overcoming this protection. *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023). Thus, the issues presented are:

1. Did Plaintiff allege sufficient facts implicating Dr. Smith in a violation of Plaintiff's Eighth Amendment right to receive adequate medical care?
2. Was the alleged violation of Plaintiff's Eight Amendment right based on clearly established law as of the time of the challenged action?

# Introduction

In 2019, Plaintiff-Appellee Robin Wayne Smith (Plaintiff), a prisoner housed in the Texas Department of Criminal Justice (TDCJ), sued several doctors and prison officials, claiming they were deliberately indifferent to his medical condition in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Over five years later, he amended his complaint to include another official, Dr. Monte Smith. But Plaintiff's amended complaint makes no factual allegations against Dr. Smith individually; it merely lists him as a named party for introductory purposes and includes general boilerplate recitations as to all the defendants as a group. Despite Plaintiff's failure to allege that Dr. Smith violated his constitutional rights in any way, the district court overruled Dr. Smith's motion to dismiss and denied his entitlement to qualified immunity. That was error, and this Court should reverse the district court's order and render judgment dismissing Dr. Smith from the suit.

## Statement of the Case

### I. Factual Background[1]

In 2002, Robin Wayne Smith received a surgically implanted spinal cord stimulator (SCS) from the Dallas Veterans Affairs Hospital (VA) to treat his Loin Pain and Hematuria Syndrome (LPHS), a condition causing chronic back pain. ROA.327-28. The VA then "revised" his SCS in 2003 and 2005 and later approved surgical replacement of the device in 2011. ROA.328. Some three years later, in 2014, Smith was convicted and sentenced to thirty five years imprisonment without the possibility of parole. ROA.328.

Plaintiff was placed in TDCJ's Robertson Unit, which partners with Texas Tech University Health Science Center. ROA.328.

In 2021, TDCJ transferred Plaintiff from the Robertson Unit to the Hughes Unit, which partners with the University of Texas Medical Branch (UTMB) for certain medical services. ROA.325, 332. Dr. Smith serves as the Senior Medical Director for Correctional Managed Care at UTMB. ROA.325. While at the Hughes Unit, Plaintiff received a referral to have his SCS removed and, in 2022, he underwent surgery pursuant to the referral. ROA.332. He continues to be treated with pain medications and has not returned to UTMB for pain management. ROA.333-34.

[1] Nearly all the allegations in Plaintiff's complaint relate to the other Defendants, not Dr. Smith. Therefore, Dr. Smith relays only the facts—as stated in the complaint—that are relevant to Plaintiff's claim against him.

## II. Procedural Background

Plaintiff filed an amended complaint adding Dr. Smith as a party in August 2024, over five years after the filing of his initial complaint and after the denial of summary judgment as to the other three defendants in his lawsuit. ROA.324-40. Dr. Smith moved to dismiss the complaint, arguing that he was entitled to qualified immunity and that Plaintiff failed to state a claim against him. ROA.379-84. Plaintiff responded in opposition to the motion and alternatively asked the district court for leave to amend his complaint again to allege more facts for his claim against Dr. Smith. ROA.391-401.

After full briefing on the motion, the district court denied Dr. Smith's motion to dismiss in a truncated order. ROA.415-18. First, the district court concluded that Plaintiff stated a claim against Dr. Smith because paragraph 41 of his complaint—a paragraph alleging that "[e]ach named Defendant" contributed to the violation of Plaintiff's rights by "either directly refusing to approve and facilitate the treatment" or by "being responsible for the drafting, approval, institution, and implementation" of an unconstitutional policy—"clearly alleges [Dr. Smith's] involvement." ROA.416-17 (quoting ROA.336). The district court did not explain any factual allegations supporting this conclusion. ROA.416-17. Second, the district court denied Dr. Smith qualified immunity, reasoning that *Estelle v. Gamble*, 429 U.S. 97 (1976) clearly established the law surrounding the provision of adequate medical care to prisoners "almost half a century" ago. ROA.417. The district court did not analyze qualified immunity any further. Dr. Smith then appealed. ROA.419-21. The appeal was later dismissed without prejudice by the Court as the parties attempted

mediation. Order, Dkt. No. 27-2. The Court reinstated the appeal within the 180-day deadline. Order, Dkt. No. 33.

## Summary of the Argument

The Court should reverse the district court's order denying Dr. Smith qualified immunity.

*First*, Plaintiff has not sufficiently alleged an Eighth Amendment violation against Dr. Smith. Plaintiff's complaint contains no factual allegations about anything Dr. Smith is alleged to have done—it merely names him for introductory purposes and then lumps him into a single, conclusory paragraph alleging that "each named Defendant" contributed to a constitutional violation. There are no facts (a) showing Dr. Smith was personally involved in Plaintiff's care, (b) identifying any specific policy Dr. Smith drafted or implemented, or (c) from which to infer that Dr. Smith was even aware of Plaintiff or his condition. To the contrary, Plaintiff's own allegations undercut his claim: He received the very surgery he had been seeking for years—removal of his SCS—while housed at the Hughes Unit, the facility allegedly under Dr. Smith's supervision. Bare legal conclusions devoid of factual support cannot overcome the first prong of qualified immunity.

*Second*, even if Plaintiff had adequately alleged an Eighth Amendment violation, Dr. Smith is still entitled to qualified immunity because no clearly established law put him on notice that his alleged conduct was unlawful. The district court cited only the nearly half-century old principle from *Estelle v. Gamble* that prisons must provide adequate medical care, but defining the right at that level of generality is exactly what the Supreme Court has repeatedly prohibited. None of the other cases Plaintiff relied

on below involved remotely comparable facts, and the prior panel decision in this case is both unpublished and factually distinguishable. Moreover, Dr. Smith's alleged conduct, to the extent the factual allegations can be attributed to him, was not objectively unreasonable in light of then clearly established law: Plaintiff arrived at the Hughes Unit in March 2021, and his SCS was removed approximately one year later. Those circumstances hardly qualify as the sort of wanton disregard for serious medical needs that could defeat qualified immunity.

## Standard of Review

The denial of a motion to dismiss asserting qualified immunity is reviewed de novo. *Stapleton v. Lozano*, 125 F.4th 743, 748 (5th Cir. 2025).

## Argument

Qualified immunity protects officials like Dr. Smith from unsupported claims like the one in this appeal. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Qualified immunity is not a mere defense to liability; it is wholesale protection from the burdens of litigation. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Erroneously advancing a case to trial effectively eliminates qualified immunity's protections, including "[o]ne of the most salient benefits:" protection from pretrial discovery. *Id.*

A plaintiff attempting to "overcome qualified immunity must," therefore, "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* Well-pleaded facts in the complaint are accepted as true, but "legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement" are not. *Doe v. Ferguson*, 128 F.4th 727, 733 (5th Cir. 2025) (quoting *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023)). When the plaintiff fails to plead facts to state a plausible claim, dismissal is proper. *Id.*

That is the case here. Plaintiff has failed to overcome Dr. Smith's entitlement to qualified immunity because Plaintiff has not sufficiently alleged a constitutional violation against Dr. Smith, and even if he did, Dr. Smith did not violate clearly established law.

## I. Plaintiff Has Not Sufficiently Alleged an Eighth Amendment Violation Against Dr. Smith.

Plaintiff fails to overcome the first prong of qualified immunity because he has not adequately pleaded a violation of the Eight Amendment against Dr. Smith.[2] While this is an interlocutory appeal from the denial of qualified immunity, this Court may review the sufficiency of Plaintiff's pleadings under the collateral-order doctrine. *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). That is because "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be

[2] Because Plaintiff's claim requires sufficient allegations of a constitutional violation, his request for injunctive relief—which qualified immunity does not apply to—should also be denied. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

decided in isolation from the facts pleaded. In that sense the sufficiency [of] the . . . pleadings is both 'inextricably intertwined with,' and 'directly implicated by,' . . . the qualified-immunity defense." *Id.* (citations omitted) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995); *Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006)).

Supervisory officials like Dr. Smith cannot be vicariously liable for the actions of their subordinates. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). Rather, the plaintiff "must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation," such as through the adoption of an unconstitutional policy. *Parker v. LeBlanc*, 73 F.4th 400, 405 (5th Cir. 2023) (quoting *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003)). Either way, liability only arises when the supervisory official acts, or fails to act, with deliberate indifference, a disregard for a known or obvious consequence of his actions. *Id.*; *see also Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001) ("In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs.").

"Deliberate indifference is akin to 'subjective recklessness,'" *Spikes v. Wheat*, 141 F.4th 662, 668 (5th Cir. 2025) (per curiam) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)), and thus "a 'stringent' and 'extremely high standard to meet,'" *id.* (quoting *Domino*, 239 F.3d at 756). When personal involvement of the supervisory official is alleged, the plaintiff "must show that the defendant: (1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists'; (2) subjectively 'dr[e]w the inference' that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (alteration in original) (quoting *Farmer*, 511 U.S. at 837). When an unconstitutional policy is alleged to have been enacted by the supervisory official, deliberate indifference requires that the defendant had "actual or constructive notice" that their policy would result in constitutional violations. *Porter*, 659 F.3d at 447 (quoting *Connick v. Thompson*, 563 U.S. 51, 59 (2011)). "This typically requires showing notice of '[a] pattern of similar constitutional violations' due to deficient policies, permitting the inference that [the] Defendant[] deliberately chose policies causing violations of constitutional rights." *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (first alteration in original) (quoting *Porter*, 659 F.3d at 447). Negligence and medical malpractice are not enough, *Estelle*, 429 U.S. at 105-06, and "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,'" *Domino*, 239 F.3d at 756 (quoting *Estelle*, 429 U.S. at 107).

As explained below, Plaintiff alleges no facts to support his legal conclusions about Dr. Smith. No facts demonstrate the personal involvement of Dr. Smith, nor that Dr. Smith is responsible for an unconstitutional policy.

### A. Plaintiff alleges no facts to support his legal conclusions about Dr. Smith.

Plaintiff has not alleged facts implicating Dr. Smith, much less facts demonstrating deliberate indifference or an unconstitutional policy attributable to him. Plaintiff first alleges that Dr. Smith is the official in charge of the overall operation of the prison medical facility at the Hughes Unit. ROA.325. Later in the complaint, he

states that each Defendant has contributed to the violation of his rights by either personally refusing to treat him in the manner he desires, or by "being responsible for the drafting, approval, institution, and implementation of" the alleged unconstitutional policy. ROA.336. That's all.

Less than two years ago, this Court dismissed a supervisor liability claim because the plaintiff's "broad and conclusory allegation that [the defendant] acted as a policy maker within TDCJ [wa]s insufficient to state a claim that he affirmatively participated in conduct causing a constitutional violation or that he implemented a policy that caused any violation." *Jones v. Lumpkin*, No. 23-40612, 2024 WL 1994279, at *1 (5th Cir. May 6, 2024) (per curiam). The same sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" plague Plaintiff's complaint here. *Iqbal*, 556 U.S. at 678. His claim against Dr. Smith should fare no better than the plaintiff's claim in *Jones*.

Indeed, Plaintiff's complaint contains no facts showing that Dr. Smith was personally involved in Plaintiff's treatment or that Dr. Smith implemented an unconstitutional policy. There are no factual, non-conclusory allegations that Dr. Smith approved or implemented any TDCJ policies, that Dr. Smith has the authority to approve or implement any TDCJ policies, or that any policies approved or implemented by Dr. Smith caused any deprivations of care Plaintiff allegedly experienced while housed at TDCJ facilities—one of which, as Plaintiff himself alleged, is outside of Dr. Smith's control. ROA.325. From around 2015 to early 2021, Plaintiff was under TDCJ control at the Robertson facility. ROA.328-32. Dr. Smith, however, is

alleged to be head of the operation at the Hughes Facility, the facility TDCJ transferred Plaintiff to in March 2021. ROA.332.

Even assuming that *all* these inferences can be reasonably drawn from the lack of factual allegations in Plaintiff's complaint, he has still not sufficiently alleged that Dr. Smith acted with deliberate indifference. There are no factual allegations that Dr. Smith "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" as to Plaintiff and that Dr. Smith "disregarded the risk." *Cleveland*, 938 F.3d at 676 (quoting *Farmer*, 51 U.S. at 837). Nor are there factual allegations relating to Dr. Smith's "actual or constructive notice" of any TDCJ policy or that any TDCJ policy would result in the denial of medically necessary care to Plaintiff. *Porter*, 659 F.3d at 447 (quoting *Connick*, 563 U.S. at 61). This is dispositive when a claim is based on supervisor liability. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (dismissing claim against supervisor because plaintiff's complaint failed "to identify specific policies or to explain how they permitted" the wrongful conduct).

### B. The facts alleged by Plaintiff contradict his legal conclusions about Dr. Smith.

If anything, Plaintiff has alleged that Dr. Smith, in his supervisory role, acted *contrary* to any allegedly unconstitutional TDCJ policy. Despite allegedly being refused any SCS-related surgeries while housed in the Robertson Unit and allegedly being told that TDCJ does not service or "remove any of those" devices by a different Defendant, ROA.329, Plaintiff received exactly that treatment while at the

Hughes Unit—a surgery removing his SCS device, ROA.332. The Hughes Unit is described by Plaintiff as Dr. Smith's "responsib[ility]." ROA.325.

This factual allegation from Plaintiff contradicts the legal conclusion reached by the district court—that "it can be inferred" that Dr. Smith "was involved in making or implementing the policy used to deny care to" Plaintiff. ROA.417. Dr. Smith could not have both implemented a policy to refuse and authorized the surgery to remove Plaintiff's defective SCS implant he received while at the Hughes Unit, where Dr. Smith is alleged to be the head of the operation. ROA.325. Any decisions about whether to grant or deny Plaintiff surgery during his prior time at the Robertson Unit were outside of Dr. Smith's control under any generous reading of the complaint.

Plaintiff further conflates the insufficiency of his pleadings against Dr. Smith with prior rulings in this case affirming the sufficiency of his pleadings against the other Defendants. ROA.394 ("This issue was already decided in Plaintiff's favor by this Court and the Fifth Circuit with respect to the other Defendants."); *see Smith v. Linthicum*, No. 21-20232, 2022 WL 7284285 (5th Cir. Oct. 12, 2022). His argument goes like this: Because his original complaint was sufficient to overcome Defendants Talley, DeShields, and Linthicum's motion to dismiss and motion for summary judgment, his amended complaint must overcome Dr. Smith's motion to dismiss, too. *See* ROA.394-97.

That is wrong. Dr. Smith's motion to dismiss was not the same as the other Defendant's motions, nor was it based on the same operative complaint or facts.[3] Plaintiff's original complaint, like his amended complaint, made factual allegations throughout against the other Defendants. *See* ROA.13-19, 324-39. Contrast that to how his amended complaint treats Dr. Smith, who is mentioned for introductory purposes only. *See* ROA.325.

Plaintiff lumps Dr. Smith in with the rest of the Defendants just once. The allegations against all Defendants are that they "contributed to the violation of Mr. Smith's constitutional rights by either directly refusing to approve and facilitate the treatment" proposed by his physicians or that they "draft[ed], approv[ed], institut[ed], and implement[ed]" the chronic care policy that denied him treatment. ROA.336. But again, Plaintiff negates this allegation as to Dr. Smith in the complaint: "Mr. Smith's chronic pain has also continued to be unsuccessfully managed with pain medications, in accordance with the TDCJ's Correctional Managed Health Care's blanket policy regarding treatment of chronic pain conditions." ROA.332. Accepting Plaintiff's own pleading as true, the alleged unconstitutional policy of which he complains was implemented by TDCJ, not Dr. Smith. Yet Plaintiff does not allege that Dr. Smith—an employee of UTMB—is a TDCJ policy maker.

[3] Plaintiff amended his original complaint to add Dr. Smith. ROA.325. And "'[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.'" *Stewart v. City of Hou. Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) (per curiam) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam)). Plaintiff's amended complaint did not do so. His amended complaint thus supersedes the original and controls here. *See id.*

At bottom, Plaintiff provides no factual allegations "rais[ing] a right to relief above the speculative level" as to Dr. Smith. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And what few allegations there are contradict the legal conclusion pressed by Plaintiff and erroneously confirmed by the district court. The Court need go no further to reverse.

## II. Dr. Smith Is Entitled to Qualified Immunity.

To overcome qualified immunity, Plaintiff "must show that (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the conduct." *Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022). Even if Plaintiff has sufficiently alleged a constitutional violation, he still fails to defeat Dr. Smith's entitlement to qualified immunity because Dr. Smith did not violate clearly established law.

### A. Dr. Smith did not violate clearly established law.

The question of whether a government official violated clearly established law "is a doozy" to which the "§ 1983 plaintiff bears the burden of proof." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). A right is clearly established *only* when "existing precedent . . . ha[s] placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), so that "it is sufficiently clear that every reasonable official would have understood that what he is doing violates" the right at issue, *Parker*, 23 F.4th at 522 (quoting *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)). The "right in question must be specifically described, and the Supreme Court has, on numerous occasions, directed courts 'not to define

clearly established law at a high level of generality.'" *Id.* (quoting *Cunningham*, 983 F.3d at 191). This demanding standard "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (quoting *Malley*, 475 U.S. at 341).

"One need not find a case squarely on point to show that a right was clearly established." *Parker*, 23 F.4th at 522. But the "precedent must provide that the existence of the right is not debatable." *Id.* at 522. "[T]here must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Cunningham*, 983 F.3d at 191 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)). This can be achieved either through Supreme Court precedent or "a robust 'consensus of cases of persuasive authority.'" *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). By either path, the relevant precedent must "squarely govern[]" the facts at hand. *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

The district court concluded that *Estelle v. Gamble* clearly established a state's requirement "to provide adequate medical care for people the state incarcerates." ROA.417 (citing 429 U.S. at 103). That broad principle may be true. But "defin[ing] clearly established law at a high level of generality," as the district court did, runs counter to precedent from the Supreme Court and this Court. *al-Kidd*, 563 U.S. at 742; *Cunningham*, 983 F.3d at 191. Courts must undertake the inquiry "in [the] light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577

U.S. at 12 (quoting *Brosseau*, 543 U.S. at 198). Doing so here, *Estelle* is neither specific enough nor helpful to Plaintiff's case.

In *Estelle*, a prisoner—injured while performing a prison work assignment—sued two prison officials and a medical director alleging that he was receiving inadequate medical care. 429 U.S. at 98. The prisoner alleged that after the injury, he was seen by prison medical staff who prescribed him varying pain medications and granted him certain accommodations, like a release from any prison work and a directive to move him to lower bunk rather than a top bunk in his cell. *Id.* at 99. The prison staff, however, failed to comply with some of these directives. For example, the prison staff did not move the prisoner to a lower bunk, failed to fill one of his prescriptions in a timely manner, and refused to take him to a hospital after he complained of severe cardiac-related symptoms at least three times. *Id.* at 99-101. The prison staff also placed the prisoner in administrative segregation and solitary confinement due to his refusal to work from the alleged pain. *Id.*

The Supreme Court first held that the prisoner failed to state a claim against the medical director. *Id.* at 107. The prisoner alleged that the medical director and other medical staff saw him various times, inadequately diagnosed his injury, and mistreated him by prescribing only bed rest and pain medication. *Id.* In the prisoner's view, "more should have been done by way of diagnosis and treatment," and "a number of options . . . were not pursued." *Id.* While the court of appeals agreed that further testing, such as X-rays, would have led to a better diagnosis and treatment plan, the Supreme Court rebuked this type of analysis as an improper inquiry. That decision, the Court reasoned, was a "classic example of a matter for medical

judgment," not a court's judgment. *Id.* And regardless, a medical decision to order pain medication instead of an X-ray did not represent cruel and unusual punishment. "At most it [wa]s medical malpractice," not the sort of deliberate indifference required to hold a supervisor liable under section 1983. *Id.* Even applying the liberal pleading standards of a pro se complaint, the prisoner failed to state a claim against the medical director. *Id.* The Court then remanded the case for further analysis as to whether a claim had been stated against the non-medical prison officials, which the court of appeals had not addressed. *Id.* at 108.

Regardless of the specificity of the right established in *Estelle*, the case cuts in favor of Dr. Smith's entitlement to qualified immunity, not against it. Two parts of the Supreme Court's analysis show why. First, the medical director was alleged to have personally treated the prisoner twice. *Id.* at 107. But here there are no allegations of personal involvement by Dr. Smith, nor are there any allegations indicating that Dr. Smith was aware of Plaintiff and his condition. Second, whether the decision to prescribe pain medication and forego other procedures, like an X-ray, was the medical director's or not, the prisoner had not stated a claim against the medical director. *Id.* The decision was one of medical judgment and not one to be second-guessed by courts. *Id.*

So too here, where others decided to prescribe pain medication for Plaintiff rather than provide SCS surgery, do we have a "classic example of a matter for medical judgment." *Id.* And even if Dr. Smith had personally made these decisions, he falls comfortably within *Estelle*'s protection for questions of medical judgment: "[M]edical decision[s]," such as those alleged by Plaintiff, do "not represent cruel and

unusual punishment." *Id.* "There is no Eighth Amendment claim just because an inmate believes that 'medical personnel should have attempted different diagnostic measures or alternative methods of treatment.'" *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)); *see also Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) (prisoners are not entitled to "the best [treatment] that money c[an] buy"). And "when 'medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials,'"—as Plaintiff was here—"[d]eliberate indifference is not established." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (first alteration in original) (quoting *Norton*, 122 F.3d at 292).

The other cases relied on by Plaintiff below—*Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) (per curiam) and *Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011)—are of no more help. *See* ROA.398-99. *Easter* involved a section 1983 claim against a prison nurse who "refused to provide any treatment to, and ignored the complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems. 467 F.3d at 464. This Court, taking the prisoner's allegations as true, reasoned that the prisoner "(1) had a heart condition, (2) was experiencing severe chest pain, and (3) did not have his prescribed heart medication," all of which were known by the nurse. *Id.* at 463. Yet the nurse refused to provide the prisoner with his prescribed medication. Those facts are not remotely close to this case, where prison officials are alleged only to have inadequately balanced the need for surgery with the availability of pain-management alternatives, like pharmaceuticals.

*Porter* is even further off the mark. There, a prisoner sued the Commissioner of Mississippi's Department of Corrections (MDOC) after being wrongfully detained for fifteen months beyond his release date due to a mistake by MDOC employees. 659 F.3d at 444. The prisoner argued that the Commissioner failed to implement a recordkeeping policy to prevent mistakes of this sort, but this Court *granted* qualified immunity to the Commissioner because the evidence did not show that the Commissioner's "policies, or the lack of others, were unreasonable." *Id.* at 447. No reasonable juror could have determined "that it was obvious that the likely consequence of not adopting more specific policies in the records department would be a deprivation of civil rights." *Id.* at 448 (cleaned up). *Porter*, like *Easter*, looks nothing like this case.

Plaintiff cited *Porter* to the district court as support for the assertion that "a supervisory official may be held liable for implementing a constitutionally deficient policy that caused constitutional harm." ROA.398. That broad generalization is an accurate statement of law and one that Dr. Smith does not contest. But it does not follow that *Porter* clearly established the right that Plaintiff argues he holds. *Porter*, in contrast to this case, was about the right to timely release from prison. The assertion that Plaintiff draws from *Porter* stems from the Court's analysis on whether the Commissioner's actions were objectively unreasonable. While that assertion is relevant to Plaintiff's theory of liability against Dr. Smith, *Porter* has nothing to do with the Eighth Amendment and is irrelevant to the clearly established prong here.

The prior panel decision in this case does not get Plaintiff across the line, either. Like Plaintiff did with his inadequate pleadings regarding Dr. Smith, he relied on *Linthicum*, 2022 WL 7284285 below. But that is mistaken for three reasons. First,

that decision involving the other three Defendants in this case came out in October 2022—well over a year after Plaintiff was transferred to the Hughes Unit and over five months after Plaintiff had his SCS removal surgery there. ROA.332. As a result, that case could not have given Dr. Smith "fair notice that [his] conduct was unlawful" while Plaintiff was at the Hughes Unit leading up to his SCS-removal surgery. *Brosseau*, 543 U.S. at 198. Second, unpublished opinions cannot clearly establish the law. *Garcia v. Blevins*, 957 F.3d 596, 601 (5th Cir. 2020). And third, there is a factual basis to differentiate between Dr. Smith and the other Defendants. The factual allegations regarding the other Defendants in the complaint, compared to the complete absence of them regarding Dr. Smith, indicate that Dr. Smith acted differently than the other Defendants.

Qualified immunity protects officials unless the unlawfulness of their conduct is apparent from existing case law. *See, e.g.*, *Taylor v. Barkes*, 575 U.S. 822, 826-27 (2015) (per curiam) (reversing denial of qualified immunity where no decision of the Supreme Court or robust consensus of authority established the right asserted). Because Plaintiff has never provided clearly established law at the requisite level of specificity, and because that law says valid issues of medical judgment like that exercised here do not violate the Eighth Amendment, Dr. Smith is entitled to qualified immunity.

### B. Dr. Smith's alleged conduct was not objectively unreasonable.

Even assuming that Dr. Smith's alleged conduct can support an Eighth Amendment claim, qualified immunity would still apply because his conduct was not objectively unreasonable under the circumstances alleged.

Qualified immunity protects officials whose conduct is reasonable even if it ultimately proves to have been mistaken. *See Malley*, 475 U.S. at 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Thus, another way to frame the qualified-immunity analysis is whether Dr. Smith's conduct was objectively unreasonable. *See Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (per curiam) ("Qualified immunity is justified unless *no* reasonable offic[ial] could have acted as [the official] did here."). The Court "consider[s] an official's conduct to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

Here, Dr. Smith's alleged conduct was not unreasonable. Plaintiff did not arrive at the Hughes Unit, where Dr. Smith was "responsible for the overall operation," ROA.325, until March 2021, ROA.332. Plaintiff's SCS was removed in March 2022—about a year after his arrival. ROA.332. Plaintiff therefore cannot "show that [Dr. Smith] 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Spikes*, 141 F.4th at 668 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); *see also Crittindon*, 37 F.4th at 189 (upholding qualified immunity when the allegations demonstrate that the defendant, when he learned of the alleged constitutional violations, acted promptly to remediate them). There is nothing objectively unreasonable about SCS-removal surgery being provided to Plaintiff—which is what he sought for years—within a year of arriving at the Hughes Unit under Dr. Smith's control.

## Conclusion and Prayer

The Court should reverse the judgment of the district court and render judgment dismissing the claims against Dr. Smith.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Cory A. Scanlon
Cory A. Scanlon
Assistant Solicitor General
Cory.Scanlon@oag.texas.gov

Garrett C. Gray
Assistant Attorney General

*Counsel for Appellant*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,342 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Cory A. Scanlon
CORY A. SCANLON